DECISION AND JOURNAL ENTRY
Appellant, Mary Hoskins,[1] appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter, Shirin Hoskins, to the Summit County Children's Services Board ("CSB"). This Court affirms.
Appellant and William Hoskins[2] are the divorced parents of Shirin Hoskins, born August 26, 1987. Appellant is also the parent of four other children, none of whom resided with her at the time of the hearing in this matter. Of the four, one was an adult daughter living on her own; two younger children were in the custody of their father, Mark Foster, a man with whom appellant had a live-in relationship for seven years; and the fourth was Perry Cartwright who resided with appellant and Shirin for most of his life, but was incarcerated at the time of the hearing below.
CSB has a long history with the family, including 17 referrals, dating back to 1983. The current proceedings were initiated on May 19, 1998, with allegations that Shirin was a neglected and/or dependent child. CSB was concerned that Shirin was not receiving necessary medical and psychological treatment. Shirin, then age 10, had suffered from encopresis, a disorder in which "older youngsters stain their underwear with small amounts of loose bowel movements several times a day," and enuresis, repeated wetting, since the age of five. School personnel had repeatedly requested medical intervention or access to previously obtained medical results, in order that appropriate behavioral treatment or techniques might be utilized as the child was soiling herself several times a week while in school.[3]
An adjudicatory hearing was begun on June 12, 1998. At the hearing, it was stipulated by the parties that Shirin had been sexually abused at the age of eight by her half-brother, Perry, then age 14. The hearing was continued so that Shirin might complete psychological and pediatric gastroenterological evaluations.
On October 19, 1998, Shirin was removed from the home on a temporary emergency basis because Perry, who had been adjudicated delinquent for gross sexual imposition, was again living in the family home. On November 2, 1998, CSB moved to terminate emergency temporary custody because Perry moved to the home of his maternal grandmother and appellant agreed to work with Dr. Ann Hickin, a psychologist with Northeast Ohio Psychiatric Associates, pending continuation of the adjudicatory hearing. On November 6, 1998, the juvenile court judge vacated the emergency temporary custody order and released Shirin to the care of appellant.
On December 16, 1998, upon the completion of the adjudicatory hearing, the magistrate found Shirin to be neglected and dependent. She ordered the child to be removed immediately and a shelter care hearing to be held on December 17, 1998. The magistrate ordered that an attorney/guardianad litem be appointed to represent the child. Following the shelter care hearing, the magistrate ordered that Shirin was to remain in the emergency temporary custody of CSB, in foster care. Appellant filed objections to the decision of the magistrate. The juvenile court judge overruled appellant's objections and adopted the decision of the magistrate. The juvenile judge found that the evidence clearly and convincingly established the child's need for on-going counseling to address, at a minimum, her encopretic condition and sexual abuse. Further, the judge found the evidence to be uncontroverted that while the child was in the care and custody of the mother and, at the time the complaint was filed, the child was not receiving necessary therapeutic interventions to address her problems.
In response to a motion by the guardian ad litem, the juvenile judge ordered, on April 14, 1999, that CSB provide referral information to all diagnostic and treatment personnel involved in the case and that there be free exchange of information among all such personnel involved with the family. The court ordered the Akron Child Guidance Center to distribute Coordinated Services Team reports to the court and all education, diagnostic and/or treatment personnel involved with the family who are part of the Coordinated Services Team.
A dispositional hearing was conducted before a magistrate on April 16, 1999. The magistrate ordered Shirin to be placed in the temporary custody of CSB, and a sunset dispositional hearing was set for May 19, 1999. On April 19, 1999, however, CSB filed a motion for permanent custody. The hearing set for May 19, 1999 was cancelled and the matter proceeded for hearing on the motion for permanent custody. Following a hearing conducted on September 13, 14, 15, 26, 17, and December 20 and 21, 1999, the juvenile judge found that it was in the best interest of the child that she be placed in the permanent custody of CSB and that she cannot and should not be placed with her mother within a reasonable time. Therefore, the judge granted the motion of CSB for permanent custody of Shirin Hoskins.
Appellant filed a timely notice of appeal, and presents three errors for review by this Court.[4] Two errors are consolidated to facilitate discussion.
 Assignment of Error I THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED THE SUMMIT COUNTY CHILDREN SERVICES BOARD'S MOTION FOR PERMANENT CUSTODY AND TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. III THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT THE [sic] SHIRIN HOSKINS CANNOT AND/OR SHOULD NOT BE PLACED WITH EITHER PARENT AT THIS TIME OR IN THE FORESEEABLE FUTURE.
 In appellant's first and third assignments of error, she claims that the finding by the juvenile court that it was in the child's best interest to grant permanent custody to CSB is against the manifest weight of the evidence. She also claims that the court's finding that the child cannot be placed with either parent within a reasonable time, or should not be placed with either parent, was erroneous.[5] Because both findings are required in order to terminate parental rights in the case before this Court, the assignments of error are combined for ease of discussion.
Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise
(1994), 96 Ohio App.3d 619, 624. Before a juvenile court may terminate parental rights in regard to a child who is neither abandoned or orphaned, it must find by clear and convincing evidence that: (1) it is in the best interest of the child to be placed in the permanent custody of the moving agency, based on an analysis under R.C. 2151.414(D), and (2) that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E).[6] See R.C. 2151.414(B); see, also,In re William S. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will produce in the trier of fact `"a firm belief or conviction as to the facts sought to be established.'" In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus. Appellant has contested the juvenile court's findings in both of these regards, i.e., that it is in the best interest of the child to award permanent custody of Shirin to CSB, and that Shirin cannot be placed with either parent within a reasonable time, or should not be placed with the parents.
Appellant first argues that the juvenile court's judgment on the question of the best interest of the child was against the manifest weight of the evidence. When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten (1986), 33 Ohio App.3d 339, 340. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the juvenile court.]" Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
When determining whether a grant of permanent custody is in the child's best interest, the juvenile court shall:
 [C]onsider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 (5) Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
R.C. 2151.414(D)(1)-(5).
R.C. 2151.414(E)(8) provides as follows:
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 The evidence adduced at the hearing supports the juvenile court's determination that granting permanent custody of Shirin to CSB was in the child's best interest. As to the first factor regarding the interaction and interrelationship of the child with significant persons in her life, the evidence demonstrates overwhelmingly that the primary relationships in Shirin's life are counter-productive. While the appellant and Shirin share a bond, the nature of their relationship is unhealthy and dysfunctional. In large part, the evidence supports a conclusion that appellant fails to recognize the significance of what has happened to her daughter and fails to appreciate her current needs, including protection and treatment. Expert witnesses testified that appellant makes excuses for her daughter's behavior and allows Shirin to utilize those excuses in an irresponsible way. Several expert witnesses also testified that Shirin engages in inappropriate touching of others, including her mother. Dr. Hickin, who conducted a psychological evaluation of Shirin, explained that Shirin has problems with boundaries and that she also has an excessive involvement with sexuality for a child her age. The appellant, however, denies that Shirin's behavior is inappropriate and stated that she never saw her act in a sexualized manner. Yet, at the same time, appellant testified that sexual abuse has resulted in Shirin becoming promiscuous. Dr. Hickin testified that appellant does not admit or realistically see Shirin's behaviors.
Shirin's half-brother, Perry, sexually abused her at the age of eight and he continues to act out sexually, resulting in several commitments to the Department of Youth Services. Dr. Joelle Floriana, a psychologist who conducted a sexualized behavior assessment of Shirin, testified that Shirin told her Perry sexually abused her 30 or more times in appellant's home, showed her pornographic movies, and masturbated and performed sexual intercourse with his girlfriend in front of her. Sue Wheeler, a psychiatric social worker, also testified that Shirin reported that Perry raped her repeatedly over a period of several weeks in 1996. In late 1998, after Perry returned home from DYS and Shirin was returned from emergency custody with CSB, Shirin was physically abused by Perry, i.e., he hit, pushed, and body slammed her — behavior identified by Wheeler as "grooming behavior for further sexual abuse."
Appellant has had several male partners in her life and each has presented problems in regard to her children. Appellant's first husband, Robert Cartwright, psychologically abused Shirin. Shirin's father, William Hoskins, was appellant's second husband. There is evidence from Dr. Hickin that Hoskins paid little attention to Shirin during his marriage to appellant and later, with his new wife, physically and emotionally abused Shirin. During the course of these proceedings, Hoskins voluntarily surrendered his parental rights to Shirin. Appellant testified that her next partner, Mark Foster, physically abused Shirin. There are allegations that Shirin may have sexually abused her half-siblings from the Foster relationship. Shirin's therapist, Dr. Hickin, as well as psychologist, Dr. Floriana, recommend that Shirin's access to younger children be monitored because, until she fully deals with her own abuse, she is at risk of becoming a perpetrator of sexual abuse herself. Robert Dotson, appellant's current husband, admits that he may be violent when he drinks alcohol, yells at Shirin to discipline her, and has struck her in the face. Dr. Patricia Seifert, who conducted a psychological evaluation of Dotson, indicated that he lacks an understanding of sexual abuse and encopresis, has no experience in parenting at all, and is at high risk for chemical dependency.
Shirin has a close relationship with her grandmother, but the grandmother, like appellant, also denies or refuses to accept Shirin's problems. She testified that Perry is not a threat to Shirin, that her encopresis is controllable, and that the severe behavior handicapped ("SBH") classes, recommended by the school, are not necessary. Grandmother further testified that she did not think Shirin had any problems before she was removed by CSB in December of 1998.
The guardian ad litem stated that Shirin needs and deserves to be placed in a permanent home that will address her emotional, educational, medical, and safety needs. She believes that Shirin has done well in her foster home and in school while she has been in the custody of CSB. The stability and structure of that situation have resulted in improvement. The guardian ad litem believes that granting permanent custody to CSB is in the best interest of Shirin. Shirin's therapist, Dr. Hickin, agrees with this recommendation, as does Dr. Seifert, the psychologist who conducted an evaluation of appellant.
The custodial history of the child demonstrates that Shirin has lived most of her life with her mother and her mother's male partners. Since mid-December of 1998, however, Shirin has been in the custody of CSB and has been living in a foster home. Dr. Hickin testified that Shirin has improved much over the course of her therapy, that Shirin has been more stable while in foster care, that the foster home is providing the type of structure that Shirin needs, and that appellant cannot provide a stable environment for Shirin.
The evidence presented at the hearing demonstrates that Shirin had not been given adequate medical treatment for either her sexual abuse or encopresis. Shirin is in need of counseling or therapy for a host of problems including being a victim of sexual abuse, perhaps a reactive detachment disorder, an adjustment disorder with anxiety, and encopresis. While appellant has provided some counseling for her daughter over the last seven years, it has not been consistent and, perhaps more significantly, appellant has not supported it. Instead, she has persisted in her belief that counseling is not necessary. Appellant was the victim of sexual abuse by two brothers as a child and never told anyone or obtained treatment. She has expressed the belief that since she did not have therapy, Shirin does not need it. As a result, Dr. Seifert believes that appellant is unable to address Shirin's needs in this regard. Dr. Hickin stated that Shirin continues to require additional counseling and therapy. As to the encopresis, while appellant did obtain medical advice for the condition in 1994 and Shirin began to show some brief improvement, appellant failed to follow through with all of the recommendations and did not return to the doctor when the encopresis reasserted itself. Appellant told Dr. Seifert that she believed Shirin could control her encopresis and used it to get attention. The evidence suggests that appellant's approach to both therapy for sexual abuse and medical attention for encopresis, is not only contrary to medical advice, but counter-productive and damaging to the child.
Therefore, upon consideration of the evidence going to each of the relevant factors, this Court cannot say that the juvenile judge, as the trier of fact, clearly lost her way in concluding that granting permanent custody of Shirin to CSB was in the child's best interest.
This Court next considers the finding that Shirin could not have been placed with appellant within a reasonable amount of time or should not be placed with her. In making this determination, the juvenile court shall consider all relevant evidence. If, however, the court finds by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists, the court must enter such a finding. R.C.2151.414(E); In re William S., 75 Ohio St.3d at 101. In addition to the factor listed above, those factors include:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent effort by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section * * *;
 (3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 (15) The parent has * * * allowed the child to suffer neglect as described in section 2151.03 of the revised Code, and the court determines that the seriousnesss, nature, or likelihood of recurrence of the * * * neglect makes the child's placement with the child's parent a threat to the child's safety.
 The evidence presented at the permanent custody hearing supports the conclusion of the juvenile judge that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
The case plan objectives that CSB had set for appellant included: (1) appellant will receive a psychological evaluation and comply with treatment recommendations, (2) appellant will improve her parenting skills (3) appellant will improve her understanding of sexual abuse, (4) Shirin will receive a psychological and/or psychiatric evaluation and comply with treatment recommendations, (5) Shirin will have her medical needs met on a consistent basis and comply with all recommendations of health care professionals, and (6) Mr. Dotson will attend appointments and participate in Shirin's therapy to the extent requested by the therapist.
Appellant has been consistent in her visitation of Shirin and there is no question that she loves her daughter. At the same time, however, the record supports the finding of the juvenile judge that appellant has demonstrated a lack of commitment toward the child by failing or refusing to protect Shirin from a multitude of abuses by Perry and her male partners.
The juvenile judge found that appellant suffers from a chronic emotional illness. The record reveals that appellant repeatedly objected to the part of the case plan that required her to obtain a psychological evaluation. She eventually did obtain such an evaluation, but not until after the motion for permanent custody was filed and more than a year after first requested. The results of that evaluation indicated that appellant is not able to parent Shirin effectively and productively because she is not able to identify the problems that she has as a result of her own sexual abuse as a child. Dr. Seifert testified that appellant has several personality disorders that are unlikely to be improved by either therapy or counseling. One of the disorders is dependent personality disorder, marked by a disregard for the safety of herself and others and demonstrated by staying in relationships that are abusive and harmful to her children and herself. The psychologist indicated that even if appellant were to enter into counseling for parenting or her sexual abuse now, it would be years before she might be able to adequately parent and protect her daughter. Appellant complains that CSB gave little opportunity to address the issues newly identified by the psychologist in June of 1999. In making this argument, however, appellant neglects the fact that CSB had been encouraging appellant to obtain a psychological evaluation and pursue recommended treatments for a year before she finally obtained the evaluation. In addition, warning signals of Shirin's difficulties were set in motion in the form of the school's requests for medical evaluations long before that.
The juvenile court judge also found that appellant continuously and repeatedly failed to substantially remedy conditions that caused the original removal of Shirin lack of protection from Perry, as evidenced by his physical assault of Shirin after she was returned home from emergency temporary custody in November of 1998; not maintaining Shirin in therapy or meeting Shirin's medical needs for encopresis, as discussed above; and not cooperating with school personnel. In this last regard, while appellant stated that she believed she had been cooperative with school personnel, testimony from a guidance counselor is to the contrary. The counselor stated that repeated requests for medical examinations, access to medical records, extra sets of clean clothing, a signature on an individual education plan, and permission for Shirin to be in the SBH class, as recommended by her teachers, went unheeded, and created increased social and academic problems for Shirin in school.
The juvenile judge concluded that appellant is unwilling to provide her daughter with the basic necessities, such as preventing her from suffering physical, emotional or mental neglect by reason of failing to provide and support her in counseling for sexual abuse and failing to follow through with medical treatment for encopresis.
The juvenile judge also concluded that the interaction and interrelationship of Shirin with Perry and with appellant is such that they remain a threat to Shirin's health and welfare. The judge found that appellant's unwillingness to protect Shirin from abuse by Perry, her husbands, or boyfriends was demonstrated by appellant's unwillingness to comply with portions of the case plan.
Upon careful review of the record, this Court cannot say that the juvenile judge erred in concluding that the child cannot be placed with appellant within a reasonable time or should not be placed with appellant.
Accordingly, the first and third assignments of error are overruled.
 Assignment of Error II THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT THE SUMMIT COUNTY CHILDREN SERVICES BOARD MADE REASONABLE EFFORTS AS REQUIRED BY O.R.C. SECTION 2151.419 TO RETURN THE CHILD TO THE CHILD'S HOME.
 In her second assignment of error, appellant argues that the juvenile court erred when it found that CSB complied with the mandates of R.C. 2151.419(A)(1). Specifically, she argues that while CSB provided services to help the minor child, it did not do enough to help appellant overcome her own problems so that the family could be reunited.
R.C. 2151.419(A)(1) provides that at hearings, such as in the case at bar, regarding the removal of a child from his or her home, the juvenile court shall determine whether the children services agency "has made reasonable efforts" towards reunification. The burden of demonstrating that reasonable efforts were made is upon the agency. Id.
Appellant asserts that "[t]he clearest example of CSB's lack of interest in helping appellant overcome her issues was the prevention of appellant from jointly attending Shirin's therapy sessions." Appellant claims that she was "prevented" from attending Shirin's therapy sessions with Dr. Ann Hickin after the emergency temporary custody order in December of 1998.Beginning in July of 1998, and as required by court order, appellant brought Shirin to Dr. Hickin for an evaluation. Dr. Hickin conducted five sessions with Shirin, including three joint sessions with appellant. Dr. Hickin continued to provide 33 weekly therapy sessions to Shirin until August of 1999. Subsequent to Shirin's removal from appellant's home in December of 1998, a CSB worker transported Shirin to her sessions. Apparently, these are the sessions that appellant wished to attend.
The case plan provided that Shirin was to obtain a psychological evaluation and follow recommended treatment and that appellant, as well, was to obtain her own psychological evaluation and follow all recommended treatment. An amendment to the case plan, filed on February 5, 1999, indicates that appellant was to participate in Shirin's counseling "as recommended by the counselor." The fact that Dr. Hickin interviewed appellant as a part of Shirin's evaluation or conducted some joint sessions does not serve to imply that appellant was to attend all of Shirin's therapy sessions. Appellant has not cited to any portion of the record that suggests she was required or otherwise entitled to attend all of Shirin's therapy sessions.
This Court's review of the record supports the conclusion that much of the most significant progress made by Shirin took place after she was removed from appellant's custody and was attending therapy sessions alone. For example, it was only then that Shirin was finally able to discuss the sexual abuse by her brother. Dr. Hickin testified that Shirin regressed when she was involved with her mother. Caseworker Leann Benitez confirmed that notion, explaining that the mere discussion of home visits increased Shirin's behavior problems. The record does not support appellant's claim of a lack of interest on the part of CSB in this regard.
Furthermore, the record before this Court includes ample testimony regarding services provided to the entire family. CSB included psychological evaluations and recommended treatment for appellant, Shirin's father, and appellant's current husband in its case plan. CSB offered to provide appellant with a list of area agencies that could provide such psychological evaluations and their telephone numbers. Appellant was also advised to complete a parenting program and CSB workers were to provide her with a list of such programs and their start-dates. The case plan indicates that CSB was available to provide appellant with support and guidance to meet the objective of a safe stable home, with referrals for homemaker, food bank, and utility assistance, if necessary. CSB was available to assist appellant with filling out job applications, if needed, and assist with interview skills. Caseworkers also made visits and provided monitoring for progress and compliance in regard to appellant, other family members, and Shirin.
The school counselor offered to drive Shirin to a doctor for a medical evaluation herself and the school even offered to pay for it. Appellant did not accept the offer, however. When appellant raised the issue of cost for medical services, CSB suggested the names of agencies that accept Medicare or would provide services on a payment plan or a sliding fee basis.
This Court finds that the juvenile court did not err in finding that CSB made reasonable efforts to return the child to the child's home. The assignment of error is overruled.
Accordingly, appellant's assignments of error are overruled. The judgment of the juvenile court granting permanent custody to CSB is affirmed.
 —
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ DONNA J. CARR
BATCHELDER, P. J., WHITMORE, J., CONCUR
[1] Appellant changed her name to Mary Dotson following her marriage on August 17, 1999 to Robert Dotson.
[2] During the proceedings below, William Hoskins voluntarily waived all parental rights to Shirin. He is not a party to this appeal.
[3] According to caseworker Leann Benitez, the substance of these allegations was previously raised by a February 23, 1998 referral. That referral was based on an allegation of neglect for failure to address the requests of Shirin's school for a medical evaluation of the child for over a year.
[4] Subsequent to an order of this Court requiring appellant to conform her brief to the appellate rules of procedure and to supply transcript references for claimed erroneous admissions of evidence, the fourth assignment of error was withdrawn by counsel for appellant at oral argument. To the extent that any portion of the fourth assignment of error regarding the failure to require the minor child to testify in these proceedings remains before this Court, it is noted that no supporting legal argument on this question was included in appellant's brief. Accordingly, such portion of the assignment of error is disregarded. App.R. 12(A)(2); App.R. 16(A)(7).
[5] Appellant makes no specific argument in support of the exact language used in the assignment of error, "in the foreseeable future," as opposed to the statutory language, "within a reasonable time." Therefore, this Court construes his argument to be a challenge that the terms of the statutory language were not met.
[6] All references to R.C. 2151.414 and 2151.419 are to the statutes in effect at the time the motion for permanent custody was filed.